Ms. Remley, whenever you're ready. Good morning, Your Honors. Robin Remley on behalf of the appellant Janet Riley. The main thrust of this case, there are a lot of issues raised in the appeal, but I think the main thrust that needs to be discussed is application of the prima facie case in a failure to promote case, which I think was misapplied at the lower court level. In order to make a prima facie case as articulated by this court in Fisher v. Avedon, a person needs to be part of a protected class, which my client was. She was a black female over the age of 40. There were several protected classes that we are alleging were at issue here. She applied for and was qualified for various positions, rejected four positions, and these positions were given to someone outside of the protected class who was not better qualified. I think there are two things that need to be discussed, and that is the fact of application of this fourth prong as to what is meant by who was not better qualified. And I think at the lower court level, the court required my client to show that she was more qualified at the prima facie level rather than, she should have been able to show that she was equally qualified or that the other party was not better qualified, but instead the lower court required at that level for my client to show that she was actually more qualified. Once that prima facie case is met, the burden then obviously shifts to the defendant to show why the chosen candidate was in fact chosen. And in this case, the reason given over and over again was this candidate was more qualified, more qualified, more qualified without anything else really. The other second issue is in the prima facie case, the second prong we applied for, there are two positions that were discussed at the lower court. My client applied for, I'm sorry, there were two positions. There was an academic dean position in 2010, and then there were assistant principal positions in 2012. And I think those two positions are closely intertwined. In the first position, it was determined that my client wasn't denied a promotion because she did not apply. In 2010, the academic dean position was not advertised as an administrative position. It was advertised as a teaching position. My client wasn't looking for a teaching position. She was looking for an administrative position. Therefore, she did not apply. She didn't want to be at the teaching level. She wanted to be at the administrative level. However, once these two individuals were given the academic dean positions, they were then touted as assistant principals, placed in assistant principals' offices, had assistant principals' duties. There was even a newspaper article advertising one of the academic deans as the new assistant principal. Obviously, my client, again, did not apply for those positions because they were advertised at the teaching level. So I think there's some issue there. So there, then how can she claim there was an adverse employment action or that she was somehow procedurally barred? Well, the main position at stake here is the assistant principal position, which comes along later. That's really the main position we're concerned about. However, there is some case law in the Kehoe case that I cited that there are occasions where that second prong can be excused if a position was pre-appointed or if someone was pre-selected. If the position wasn't promoted to, you know, there wasn't an application process. And I think that is the case here with respect to those academic dean positions. They weren't promoted as administrative positions, but then they were hailed as administrative positions. There was testimony by two of the individuals, Doug Thorne, superintendent of schools, and the principal, Frank Search, that this academic dean position was a stepping stone or an addition for an assistant principal position. Because my client wasn't able to technically apply for those or did not want to because they weren't deemed administrative positions, she wasn't given that opportunity to get that experience, which would have been a stepping stone to the administrative position. Then, when it came to the assistant principal positions, there was another issue I believe that sort of went wrong at the trial court level. Once my client complained that the assistant, that the academic dean positions were not advertised to her, those positions just miraculously disappeared and then reappeared as assistant principal positions for which she did apply. She was not chosen for either of those positions. They were at two different schools and the chosen candidates, one was a younger white male, the other candidate was a younger black female. The lower court analyzed these two positions together and actually there were several things that happened. In the lower court's opinion, they indicate that at oral argument, both parties conceded that the only protected class to be discussed with respect to those assistant principal positions was age. There is nothing in the transcript that ever indicates that plaintiff in particular ever conceded that the only issue at stake was age. Sex, age, and race still should have been examined for those assistant principal positions. The board points to, or at least the screening committee's conclusion that they thought the recommended candidates were better at answering questions relating to policy and criteria. They point out that she tended to criticize without giving solutions. I understand that, however, and I think then we get into pretext a little bit. I think as far as proving the prima facie case or providing evidence for the prima facie case at the summary judgment stage, I think she did that. I think when we get to that fourth level, she did show that she was equally qualified, if not far better. Her accolades do jump off the page as one would say. She had 30 years of experience. She had a principal's license. She was pursuing her doctorate. She had pursued minority initiatives, been in charge of every organization imaginable for many, many years. So I think she met that fourth prong when the employer was then required to come back and show its legitimate non-discriminatory reason. They, again, are just saying more qualified, and then they do add in that the individuals were better at answering the interview questions. However, those interview questions really had nothing to do with the school's own policies. They had four or five criteria in their policies sort of in a pecking order as to what was required or what was important in order to become an administrator, and my client had all of those things in the pecking order. There were checklists that were produced in response to the motion for summary judgment that showed my client had equal or more check marks than the other people in all of the categories that were required to be an administrator. If you're trying to show pretext in this context, though, don't you have to really meet a high burden that no reasonable person would think that the other person was more qualified? I mean, isn't that a real struggle in this situation? I think so, but number one, I don't even think you would get to that level. I think when the candidate shows that she met the prima facie requirements, at that point, she's proved her case. Then it's up to the defendant to come back or the employer to come back and say, here's our legitimate non-discriminatory reason. Which I just gave you the reasons in terms of the interview process. That's at least what they're saying, how she performed during the interview process, and it was also dealing with issues in the system where she criticized but didn't give solutions. I understand. I think that this can be, we can use the Fisher case in that regard. I think this case is very, very similar to Fisher. I mean, not identical, obviously. But in the Fisher case, the woman that applied for the positions in that case wasn't given the opportunity to be an acting director. And then when it came time to apply for the higher-up job, they cited the other gentleman's qualifications and experience as acting director. It's similar to this situation where my client wasn't given the acting director opportunity or the academic dean opportunity. And then in Fisher, I believe they went on to say the employer gave similar reasons. The candidate was equally qualified. The employer came back and said, I can't recall if she did better, that the gentleman did better in the interview process or not. But there was one slight, he was slightly up in one regard. And the court, I believe, in that case said that that wasn't enough to show that he was more qualified than she was. The problem here is, isn't there a criteria that was set up in terms of order of priority, in terms of what qualifications they were looking for? And this issue of length of service was in the last category, in terms of the rankings. Right, I agree, Your Honor, that the length of service was last. However, it still was a criteria. And if you look at those other criteria, she met, if not exceeded, all of the others. She was, in the assistant principal position, one of the individuals that was chosen, this Geneva Adams, who was the younger black female, had absolutely no experience whatsoever. She was, I believe, 24 years old, very young, very inexperienced, did not have that seniority, could not possibly have had nearly the level of experience or years of service or accolades that my client had. I mean, when you compare those two, most certainly my client's qualifications jump off the page. And I think there's something interesting also with this Geneva Adams, with them analyzing the assistant principal positions together. They aren't one position. And the court looks at them together and basically says, well, she can't possibly, plaintiff can't possibly meet the criteria or cannot possibly claim race discrimination or this kind of discrimination with respect to the assistant principal positions because they chose a young black female. But what they're missing is, if you look at the Jason Grasdy position and then the Geneva Adams position, there should be two different analysis there. It's not one and the same. And I don't think you can excuse discrimination in one situation just because you chose a black person in another situation. So I think there's a problem there. Now, I just want to remind you, you're in your rebuttal time.  No, I won't reserve rebuttal. I apologize, Your Honor. Thank you. Thank you. Mr. Borg? Thank you. Your Honor, if you may please the court, Brent Borg for the Appley-Elkhart Community Schools. I think it's important to take a step back because there's a lot of discussion, certainly in the district court's opinion, about several different positions that the appellant was denied. And really to focus only on what our position is, is that three positions that the appellant has raised on appeal. The court's discussed them a little bit, but just to be clear, the first is an academic dean position that the appellant was denied in 2010. The second is a blazer connection coordinator position in 2010 that essentially relates to after school programs. And the third are two assistant principal positions, one at Central High School and the other at Memorial High School in 2012. With respect to all three of these positions, the school's overall position is that in the final analysis, it selected the most qualified candidate in each instance. And as Your Honor has noted already, that is a substantial bar when the employer has advanced that as a reason. Under the Millbrook decision, there's a recognition under this Seventh Circuit that the court doesn't engage as a super personnel department. Their role is very limited and it's limited to a pretext analysis. Namely, is the proffer reason, in this instance the overriding point, we selected the most qualified candidate for the position. Is it a lie? And you have an abundance of evidence to indicate that is not the case. And on the appellant's side of the ledger, you also have an absence of evidence indicating that's the case. If I can walk through each of these positions again. Well, and if you could specifically talk about Adams. I know you will, but. I'm sorry? The woman who got the assistant principal position who was African American, who was younger, as counsel pointed out. Oh, certainly. I can start with that. She was one of the assistant principal positions in 2012. She is of the same race and the same sex as the appellant. Granted, she is under 40 years of age. And what's in the record before the court is uncontradicted affidavit testimony from one of the members of that committee that the court's already alluded to. That there were statements to the effect that the appellant wasn't terrible. She wasn't miserable during her interview. But she just didn't answer the questions and she didn't do certain things as well as the person who was chosen, Ms. Adams, the most qualified candidate. And what's more, is there anything more in the record on Adams in terms of her skills or her experience? There is evidence that at the same time or right around the same time, both the appellant and Ms. Adams obtained their administrator license. They were in what I believe is referred to in the record as the same cohort group during their academic study to obtain the principal credentials, which these are the highest factors that Your Honor had alluded to already. There's seven or eight factors that guide the committee when they make these recommendations to the board for ultimately hiring. And I think we have a little bit of a need to unpackage the notion of experience in this concept. Certainly, the appellant has significant teaching experience. But teaching experience guided by the factors that were laid out for the board is the least significant criteria. The district court talked about this. And so when we're talking about experience, yes, the appellant might have some significant teaching experience. But as compared to Ms. Adams, they both stand on the same footing with respect to administrative experience. I think you have other information in the record that had, again, back to the notion of the questioning, the interviewing process, the tendency of the appellant to criticize without coming up with her own solutions to administrative situations. Again, it's not that she did terrible. It's not that she maybe even did middle of the road. She was good enough to get to the final interview before the screening committee. But ultimately, this committee, comprised of a diverse cross-section of the community, made a determination of the best qualified candidate. And they did so based on the indication of those factors, many factors of which rank higher than the notion of pure teaching experience alone. Moving sort of backward in time again to this academic dean position in 2010, the court also already addressed it with the appellant, it fails first and foremost for the simple reason that she didn't apply for it. There's deposition testimony from the appellant to the effect of not necessarily – I disagree with counsel on this – not necessarily to the effect of I didn't think I should apply for it because I didn't think it was an administrative position, but more so because she thought the qualifications for that required educational background that she didn't have. I believe there were math and social science and those types of things. And her deposition testimony is very clear to the effect of, yeah, I looked at it, I didn't think I was qualified, and for purposes of failure to promote analysis, that's the end of the story. She cannot establish a prima facie case for the simple fact of the matter that she did not apply for the position. Now, you'll see some case law, I believe the appellant cites to an Eighth Circuit case, that in certain circumstances, yes, certainly the application requirement can be relaxed. But that's not the case based on her deposition testimony. They have a plausible reason for requiring this type of credentialing for this type of position. And just so the court knows, too, the reason it's not posted as an administrative position is because it is within the bargaining unit for teachers. They are part of the collective bargaining unit along with teachers. With respect to the Blazier Connection Coordinator position, again, an after-school position, you will find that the district court took the position that it did not constitute a substantial increase in terms of prestige, duties, or otherwise, and the appellant doesn't argue otherwise on appeal. So again, it's a failure of the prima facie case. And once again, with respect to all of these, our position is that in the final analysis, the strong language that Your Honor pointed to in the Millbrook decision carries the day. Even if World War I were to assume, for the sake of argument, that the appellant could establish a prima facie case on any of these claims, ultimately she cannot establish pretext as a matter of law. And again, that's one of the highest burden, I think, if you look at the Millbrook decisions and the reasons behind that, that the employer's decision in this context, particularly when they have a committee, particularly when they have a factors, should not be second-guessed, absent proof that their proffered reason,  Unless there are further questions, we respectfully request that this court affirm the district court. Thank you, Counsel. Thank you. How much time does Ms. Rimley have? Four minutes. Your Honor, with respect to the pretext issue, I believe there are a variety of ways that pretext can be shown, or a combination of things here, and a combination of things here point to the reasons given by defendant were actually pretext. The blanket statements that they, other than the interview questions, they continually make these blanket statements in the summary judgment motion that each candidate was more qualified, more qualified, more qualified. Well, again, without much more or without pointing to how they were more qualified, going through that pecking order that they created, that are in their own policies and procedures, they haven't shown how these individuals were more qualified. Simply, I don't know that simply answering interview questions a certain way constitute more qualified. In addition to that, there are other factors in the record combined with that that I think point to pretext. In the past, my client was incredibly involved in diversity initiatives, incredibly involved in projects to uplift young black males. Everything she did was related pretty much to minorities. She constantly faced criticism in that regard. She was involved in a karaoke program that was designed to assist the diverse population and had to go through hoops to get copyrights, whereas an equivalent white group did not. When she was applying for a particular position, Frank Surge, she wanted to bring in mentors, older black males to mentor the young black males, and Frank Surge is quoted in his deposition. I'm sorry, Frank Surge had told her that he didn't want prisoners and hoodlums brought into the school to do that mentoring. I think comments like that, the problems she faced with her diversity issues, combined with the fishiness of just the title or the, quote, more qualified point to pretext. I think that in addition to the fact that after she complained about the academic dean positions not being promoted to her as semi-administrative positions, after that happened, then those assistant principal positions were promoted, and conveniently a young black female was slipped into one of those positions, somebody who didn't have that diversity background, who wasn't in charge of initiatives to help the black population. Instead, they put somebody in there that was young that they could mold, and I think all of that points to pretext. The fact that the academic dean positions weren't promoted to her, which would have been a stepping stone for her, and had she been able to apply for those positions, she would have had that administrative experience, which would have put her in a more advanced situation or at a more advanced level than both Adams and Grasdy. I think while pursuing her doctorate, having 30 years of experience, all of the initiatives that she made on behalf of the students. If there's nothing further, Your Honor, my time is up. If you have any questions. Well, you probably have a minute. Oh, okay. It's when the red light goes on that the trap door opens. Okay, I'm sorry. Orange scared me. I think all of these things combined show pretext. Again, had she been given that opportunity at the academic dean level to apply, she would have had that stepping stone. She would have had that audition just like Grasdy did, and she would have surpassed him. She by far would have surpassed Geneva Adams. With that little bit of administrative experience, she would have been far more qualified than Geneva Adams, but she wasn't given that opportunity, and I think that points to pretext. Thank you, Your Honor. Thank you, counsel. Thank you, both counsel. The case will be taken under adjournment.